EDWARD M. ROBBINS, JR., ESQ., State Bar No. 82696
HOCHMAN SALKIN TOSCHER PEREZ P.C.
9100 Wilshire Boulevard, Suite 900West
Beverly Hills, California 90212-3414
Telephone:   (310) 281-3247
Facsimile:    (310) 859-5129
E-mail:        EdR@taxlitigator.com

Attorneys for Respondent,
SAEEDEH MIRSHAHI

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　　Petitioner,<br><br>　　vs.<br><br>SAEEDEH MIRSHAHI<br><br>　　　　　　　　　Respondent. | CASE NO.  CV 21-7841 PA (JCx)<br><br>RESPONDENT'S OPPOSITION TO THE UNITED STATES' PETITION TO ENFORCE IRS SUMMONS, DECLARATION<br><br>HEARING DATE: November 22, 2021<br>TIME:   3:00 p.m.<br>PLACE: ZOOM<br><br>ASSIGNED TO:<br>Honorable Percy Anderson<br>Courtroom 9A, 9th Floor<br>350 W. 1st Street, LA, CA 90012 |

Respondent, Saeedeh Mirshahi, by her attorneys, Hochman, Salkin, Toscher & Perez P.C., respectfully opposes the United States' Petition to Enforce IRS Summon in the above-captioned case:

## I.   QUESTION PRESENTED

In order to establish a *prima facie* case for enforcement of an IRS summons the government must make a showing that the investigation underlying the summons will be conducted pursuant to a legitimate purpose. *Crystal v. United States*, 172 F.3d at 1143-

44 (citing *United States v. Powell*, 379 U.S. 48, 57-58 (1964)).  Here the government relies on a three-year old hearsay statement from the United Kingdom to demonstrate a current legitimate tax investigation by the United Kingdom of Mr. Paul Baxendale-Walker's United Kingdom personal income tax liabilities for the taxable periods from January 1, 2007 to December 31, 2018.  Should the Court, without more, accept the government's hearsay statement regarding the existence of an ongoing investigation by the United Kingdom and its current need for the summoned data?

## II.  STATEMENT OF FACTS

The facts, as far as they go, are set out in the government's petition.  What the government failed to include was a current statement regarding the United Kingdom's need for the summoned data.

Apparently, On July 12, 2019, about one year after the United Kingdom made this data request to our government, Mr. Baxendale-Walker obtained a discharge from his bankruptcy.  We understand from British counsel:

> Thus, any debt actually proved by [the United Kingdom] in Mr Baxendale-Walker's bankruptcy *prima facie* ought to be released upon his discharge from bankruptcy on 12 July 2019, as ought any debt owed to [the United Kingdom] that could have been proved but was not.
> Opinion of Stephen Hackett, para 11, attached.

### III. ARGUMENT

Given Mr. Mr. Baxendale-Walker discharge from his tax liabilities to the United Kingdom, there is no legitimate tax investigation of Mr. Paul Baxendale-Walker's United Kingdom personal income tax liabilities for the taxable periods from January 1, 2007 to December 31, 2018.  Accordingly, the summons is unenforceable.

### IV. CONCLUSION

The Court should deny the Government's petition to enforce the summons.

Dated: November 1, 2021        HOCHMAN SALKIN TOSCHER PEREZ P.C.

*/s/ Edward M. Robbins, Jr.*

By: EDWARD M. ROBBINS, JR.
Attorneys for Respondent,
SAEEDEH MIRSHAHI

DECLARATION OF EDWARD M. ROBBINS, JR.

I, Edward M. Robbins, Jr., pursuant to 28 U.S.C. § 1746, declare and state as follows:

1. I am a lawyer for the respondent in this case.

2. As part of my duties as a lawyer for respondent, I obtained an Opinion from Stephen Hackett, a London barrister, previously practicing as a solicitor, to provide an opinion regarding the present tax investigation of Mr. Baxendale-Walker.

3. A copy of Mr. Hackett's Opinion is attached.

Dated: November 1, 2021

*/s/ Edward M. Robbins Jr.*

EDWARD M. ROBBINS, JR.
Attorneys for Respondent,
SAEEDEH MIRSHAHI

**IN THE MATTER OF PAUL BAXENDALE-WALKER IN BANKRUPTCY**

**AND IN THE MATTER OF A PETITION BY THE UNITED STATES OF AMERICA AGAINST HAWK CONSULTANCY LLC**

_____

**OPINION**

_____

**Introduction**

1. I am a barrister who was called to the Bar in England in 2011, having previously practised as a solicitor since 2008. Insolvency work (i.e. including bankruptcy) forms a significant part of my practice. Details of some of my higher-profile cases are available on my profile on my chambers website, www.3harecourt.com. I am one of 85 junior[1] barristers at the UK Bar who are recommended by the worldwide legal directory Chambers & Partners in the field of Chancery – Commercial, of which bankruptcy work is a part.

2. I acted for Paul Baxendale-Walker in contentious matters relating to his bankruptcy. However, this document is not intended as a piece of advocacy and the opinion of the law given below represents my genuine opinion. In this opinion I advise Hawk Consultancy LLC ("Hawk"), rather than Mr Baxendale-Walker personally. Nevertheless I am instructed that Mr Baxendale-Walker has agreed to my providing this opinion and waived any conflict of interest and obligations of confidence that arise towards Mr Baxendale-Walker for the purposes of my advising Hawk. I am similarly instructed that Hawk has waived any conflict of interest that may arise.

3. I do not by this document intend to give any evidence or assurances of fact. I have been sent some instructions by instructing solicitors, which contain a summary of aspects of the factual background to Mr Baxendale-Walker's bankruptcy and various investigations apparently ongoing in the USA, instigated it appears by the Inland

---

[1] i.e. barristers who are not Queen's Counsel, regardless of experience

Revenue Service. Some of the facts contained within the summary provided by those instructing (i.e. some of the facts pertaining to Mr Baxendale-Walker's bankruptcy) were at one point in my own knowledge. On reading the instructions, I was not aware of anything that was to my recollection inaccurate. Some years have passed since Mr Baxendale-Walker was made bankrupt on 11 July 2018, however, and I have not compared my own notes and contemporary documents with the instructions I have received. Therefore, nothing in this opinion should be taken as a particular endorsement of the accuracy of the version of events described in my instructions (albeit, as I say, there was nothing in that account that I believe at the time of writing to be wrong).

**The issue for this opinion**

4. Those instructing have asked me to opine on the effect of the discharge of a bankrupt on his liability to a creditor for debts owed before bankruptcy.

5. The context of the enquiry is, as I understand it, the fact that HMRC has asked the IRS to intervene to seek information pertaining to HMRC's investigation into Mr Baxendale-Walker's personal tax liabilities for the taxable periods from 1 January 2007 to 31 DFecember 2018.. It appears from my instructions that HMRC has suggested that, if the IRS lends its assistance, it may be possible for HMRC to use the information obtained to enforce against Mr Baxendale-Walker debts (allegedly) owed to HMRC before his bankruptcy.

6. I do not know the full details of HMRC's request or of the IRS's investigations; I have seen the petition and some related documents, but there are others I have not seen, including in particular HMRC's communications with the IRS. I therefore confine the below to an explanation of the law, rather than attempting to apply it to the context of this investigation, which I leave to those instructing and any US representation that may be retained by Hawk.

**Opinion**

7. A central policy underpinning the bankruptcy regime has always been to ensure that creditors are treated fairly as between themselves, whilst also ensuring that, on

2

discharge, the bankrupt has as full as possible a discharge of his debts[2]. The policy has been described by James LJ[3] in the following way:

*"The broad purview of this Act is, that the bankrupt is to be a freed man - freed not only from debts, but from contracts, liabilities, engagements and contingencies of every kind. On the other hand, all the persons from whose claims, and from the liability to whom he is so freed are to come in with the other creditors and share in the distribution of the assets."*

8. To that end, s.281(1) Insolvency Act 1986 provides a starting point that, upon discharge, a bankrupt is *"release[d]"* from, *"all the bankruptcy debts"*. This is subject to some limited exceptions, and also to the question of what constitutes a *"bankruptcy debt"*.

9. The definition of *"bankruptcy debt"* is given at s.382 Insolvency Act 1986. That provision includes in particular the following:

*"any of the following–*
*(a) any debt or liability to which he is subject at the commencement of the bankruptcy,*

*(b) any debt or liability to which he may become subject after the commencement of the bankruptcy (including after his discharge from bankruptcy) by reason of any obligation incurred before the commencement of the bankruptcy,"*

10. The starting point is accordingly that any debt or liability arising before the bankruptcy, or arising after the bankruptcy but attributable to an obligation incurred before the bankruptcy, is released on a bankrupt's discharge. The leading practitioner's text, Muir Hunter, states at 3-544

---

[2] ***Lomas v Pensions Regulator [2010] EWHC 3010 (Ch); [2011] B.C.C. 277***
[3] ***Re Llynvi Coal & Iron Co Ex p. Hide (1871–72) L.R. 7 Ch. App. 28 CA*** in Chancery at 31–32 approved in ***Lomas***

3

> *"A discharge… is intended to release him personally from his "bankruptcy debts", **whether proved or provable**."*

11. Thus, any debt actually proved by HMRC in Mr Baxendale-Walker's bankruptcy *prima facie* ought to be released upon his discharge from bankruptcy on 12 July 2019, as ought any debt owed to HMRC that could have been proved but was not.

12. As I have said above, there are certain exceptions to the principle that, *"bankruptcy debts"* are released. In practice, these exceptions amount to child maintenance liabilities (which are excluded from the scope of *"bankruptcy debts"* – s.382(5)), liability for personal injury claims (s.281(5)), liability for fines and penalties (s.281(4)), and debts incurred in respect of fraud (s.281(3)).

13. Of these exceptions, it seems only the second two that could possibly be of relevance. Even then, however, doing the best I can, it does not appear to me that any allegations of fraud or penalties are in issue. I refer to page 9, line 10 of the Memorandum of Points and Authorities and paragraph 14 of Ms Palacheck's Declaration, both of which (together with other references) suggest that HMRC's concern is recovering legitimately payable income tax. There is no reference to that tax having been avoided fraudulently, nor have I seen a reference to penalties over and above what is said to be properly payable. I do stress, however, that without a more detailed understanding of HMRC's request I cannot ascertain with confidence whether there is an allegation of fraud or an assertion of penalties payable that would engage one of the exceptions to some extent.

14. I should stress that, even though *"bankruptcy debts"* are released as against the bankrupt himself, s.281(1) expressly provides that a creditor can continue to seek to recover its entitlement through the bankruptcy process against the bankruptcy estate (i.e. the bankrupt's assets at the time of his bankruptcy, which vest in his trustee in bankruptcy). The trustee in bankruptcy continues in office after discharge (potentially indefinitely) for the purposes of getting in and distributing the assets of the estate in bankruptcy to creditors.

15. I hope that these observations are of assistance. Those instructing should not hesitate to contact me if I can assist further.

**Stephen Hackett**
**3 Hare Court**

**26 October 2021**